TRULINCS 05176104 - YEMBE, DORIS - Unit: BRO-E-A

---

FROM: 05176104
TO:
SUBJECT: Objection Letter-Petition/Motion
DATE: 03/02/2015 12:11:57 PM

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR - 6 2015 ★

BROOKLYN OFFICE

EDNY

Delivered via: Legal Mail

Honorable and Respected
Judge Reyes & Judge Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, New York, 11201

OBJECTION LETTER ,PETITION, MOTION TO STAY FORFEITURE PROPERTY
PRO SE NOTICE OF APPEARANCE

Dear Judge Reyes, it is a pleasure to have had the opportunity to inform you that I, DORIS HENRIETTE YEMBE, Owner of record, Legal owner of record of property subject of civil docket (no. 14-2693), property in civil forfeiture proceedings. As the sole legal owner, with full right and legal authority, I officially oppose and object to the interlocutory sale.
I request full dismissal and withdrawal of all pending unlawful forfeiture actions.

1. Liens against property ( 4,585.00$) constitute a minimal, ridiculous sum of debt compared to the full value of purchased and legally owned property (75,000.00$). The property is legally owned with no mortgage debt. The said liens, are associated to the lengthy , plotted unlawful incarceration of PRE-TRIAL, PRE-INDICTMENT defendant: DORIS HENRIETTE YEMBE whom was subject and victim of ethical violations, as well as prosecutorial misconduct per rule 3.8 and ABA Model.

2. As a NON-CONVICTED, NON -INDICTED defendant, Ms.Doris Henriette Yembe is subject to immediate withdrawal of criminal forfeiture.

3. Furthermore, Ms. Doris Henriette Yembe. Constitutional rights were violated, 4th Amendment right as well as Rule 41. The Warrant of arrest issued on April 29 2014, ONLY ordered the arrest of Ms.Yembe. No warrant pertaining to searches or seizures were issued at any point in time, requested or ever pending. Its now February 27 2015. This is a violation and constitute a serious critical legal offense.

4. Nevertheless, the period/lapse of time spent as the legal owner and sole owner, with full rights and authority on said property prior to the arrest is an irrelevant,ridiculous,wicked, futile, nefarious and poorly grounded argument! Ms. Yembe, a Canadian Investor property is an asset and constitute a Real Estate Investment owned with no debt, until the arrest.
It's also a vacation property for friends and family including Legal American Citizens. The purpose, length of investment owned are matters that are Ms.Yembe private concerns to entertain and NOT to the INQUISITIVE nature of the US Government POORLY represented by Orenstein.

5. Pending Forfeiture case with case number assigned by Homeland Security under :2014-4701-90001-01 holds 6 additional, items considered property per Rule 41, for which this petition further applies and request full return of the 7 items.

1-Funds held at Citibank for over 15,000.00 to be confirmed by Bank Statements
2-Porsche Boxter Sport 2013
3-Porsche Cayenne Sport 2014
4-2 Laptops computers
5-3 Cell phones
6- 11 Miscellaneous documents

Including the Royal Saxon Property unit 209, and parking space, the Forfeiture action constitute in 7 items, given the fact the Government is hiding the additional 6 items speak large volume of ethical violation and misconduct.

And additional motion with supporting evidence is to be supplemented once this letter is officially filed on civil docket and addressed by the court.

TRULINCS 05176104 - YEMBE, DORIS - Unit: BRO-E-A

---

An order to pay Royal Saxon 4,585.00$ shall be made upon release of the Citibank Funds.

Ms.Yembe was furthermore victim of conscience avoidance, prejudice, discrimination and prejudicial delay.

7. The immigration matter is irrelevant per law 18 U.S.C 243 pertaining to discrimination. Ms. Yembe was unlawfully and ILLEGALLY removed by Custom Border Officer Troy Rabideau under false pretense of "Invalid passport or visa". However, as a Canadian Citizen, Ms. Yembe is NOT required a visa to enter the USA and is legally entitled to remain for a period of 6 months and is only required a visa to work not to visit the USA. The incident occurred on August 13 2012, and Ms.Yembe's passport was valid from Sep 21 2011 to Sep 212016, therefore still valid for entry in the USA at time of removal.

Refer to Habeas Corpus hearing Feb 5 2015 in front of Judge Levy and submitted motion to that effect for further reference and details. Hearing of which Orenstein WAS NOT PRESENT. Orenstein is clearly a NOVICE in immigration law and proceedings, Orenstein is irrefutably unfamiliar with the rules and poorly raised an issue that is currently being overturned.

Lastly, a Motion Hearing for the dismissal of Criminal Complaint 14-MJ-403 is scheduled for April 24 2015 before Judge Levy per motion written and filed under seal on February 23 2015 by Ms.Yembe as Pro Se, at 2:00 pm before Judge Levy.

I therefore, request to be scheduled for a hearing RE: Forfeiture Action case no. 2014-4701-90001-01 and civil docket no. 14-2693 (Dearie.J)(Reyes.MJ) on April 24 2015 post hearing with Levy to be scheduled between 3:15 pm and 4:30 pm.

Please reply to this legal Letter, Petition/Motion via CONFIDENTIAL CERTIFIED LEGAL MAIL
   Metropolitan Detention Center
   Doris Yembe 05176-104
   P.O Box 329002
   Brooklyn, New York 11232

This letter shall not be ignored , and addressed as the defense will take full measure of the law if the Government is responsible for further Conscience avoidance, Prejudicial delay, Ethical Violation and Prosecutorial misconduct, the defense currently holds sufficiency of verifiable evidence, has private investigation ongoing and will not tarry or delay in using legal action to insure its interest are protected and constitutional rights not further breached.

This letter constitute a Notice of Appearance as Pro Se and a Civil Attorney (Legal Advisor/Witness) will support the defense (Ms.Yembe) on pro se appearance.

Respectfully Submitted

_____
Doris Henriette Yembe, Proud Follower of Jesus Christ
James 1:25 He who looks into the perfect la, the Law of Liberty {...}

## Bribery

### 7th Cir. Affirms Physician's Conviction For Home Health Referral Kickbacks

A federal appeals court held that a "referral" under the anti-kickback law describes a provider's authorization for specialist treatment, not the recommendation of any particular specialist to a patient, in affirming the conviction of a physician who received kickbacks for home health-care service referrals and recertifications (*United States v. Patel*, 2015 BL 33639, 7th Cir., No. 14-2607, 2/10/15).

The U.S. Court of Appeals for the Seventh Circuit said Feb. 10 that there wasn't any error in defendant Kamal Patel's conviction following a bench trial for violating the anti-kickback law and conspiracy. Patel argued he didn't actually refer any patients in return for kickbacks from Grand Home Health Care because he didn't make any recommendations to his patients to choose Grand Home or any particular home health provider, although he had an arrangement with Grand Home to receive payments of $300 to $400 for each new patient referral and recertification.

The court agreed with the government that Congress intended the anti-kickback law to prohibit providers from making referral authorizations that enabled government payments for care in return for kickbacks, instead of simply prohibiting physician recommendations of particular providers. The court said this reading of the statute was bolstered by common usage of the word "referral" to mean an authorization from a physician for further care in a medical care context.

**No Recommendations Made.** The government conceded at trial that Patel hadn't actually pushed any of his patients that required home health-care toward Grand Home. Instead, Patel's staff simply provided patients with a variety of home health provider brochures and instructed patients to choose whichever one they wanted.

Further, it was never in dispute that all of Patel's patients who received home health referrals required home health-care, and most of Patel's patients chose home health providers other than Grand Home.

However, the government produced evidence at trial showing that Grand Home told Patel it would pay him $400 for each new patient he referred to it and $300 for each patient recertification. In addition, the government presented evidence at trial that Patel was actually paid cash for each referral and recertification to Grand Home and that about 95 percent of Grand Home's patients were Medicare beneficiaries.

The trial judge rejected Patel's argument that he didn't "refer" anyone to Grand Home in return for a kickback because he didn't personally recommend or steer his patients to Grand Home. The trial judge said Patel's signature on referral authorization forms satisfied the referral element of the anti-kickback law.

**Referral Is Physician's Authorization.** Patel argued on appeal that the word "refer" in the anti-kickback law meant to personally recommend a particular care provider to a patient. Patel said that he didn't violate the anti-kickback law despite taking cash payments from Grand Home because he didn't recommend or endorse Grand Home to his home care patients.

In an opinion by Judge Joel M. Flaum, the Seventh Circuit rejected Patel's argument.

The appeals court noted that the anti-kickback law itself didn't define "referral," and therefore the court was obligated to interpret the statute using the ordinary and plain meaning of referral. The court said that dictionaries commonly define "referral" as directing a patient to a medical specialist, but it is also commonly used "to describe a doctor's authorization to receive medical care."

The court said the "more expansive" definition of referral as an authorization is "frequently used in the medical context." Patel's office referenced patients sent to Grand Home as "new referrals," despite the absence of a recommendation, the court noted.

The Seventh Circuit emphasized the physician's role as a "gatekeeper," as did the trial court, as the pivotal element of when a referral is made. The court pointed to the Stark self-referral law, which specifically defined a referral as an authorization for care and said it was "convinced that Congress intended the [anti-kickback law] to extend to the certification and recertification of patients for government-reimbursed care."

The court also said that the absence of evidence that Medicare suffered any harm from the kickbacks Patel received was irrelevant to whether Patel violated the statute. The court said "the danger of fraud at the certification and recertification stages is quite clear."

The U.S. Attorney's Office for the Northern District of Illinois represented the government. Sidley Austin LLP represented Patel.

BY ERIC TOPOR

Full text at http://www.bloomberglaw.com/public/document/United_States_v_Patel_No_142607_2015_BL_33639_7th_Cir_Feb_10_2015.

## Exclusionary Rule

### Fruits of Mobile Phone Ping Were Admissible Even If Federal Ping Law Is Unconstitutional

Evidence obtained by police officers who used a court order, rather than a search warrant, to track the location of a defendant's mobile phone was admissible at trial even assuming that the federal statute that authorizes warrantless pings of mobile phones violates the Fourth Amendment, the Missouri Supreme Court held Feb. 3 (*State v. Hosier*, 2015 BL 28352, Mo., No. SC93855, 2/3/15).

The Stored Communications Act, at 18 U.S.C. § 2703(d), and state statutes modeled on that provision authorize investigators to use court orders based on less than probable cause to obtain real-time cell site location information (CSLI) from individuals' mobile phone service providers.

The controversy over the constitutionality of obtaining CSLI without a warrant remains ongoing. At the core is a disagreement about the reasonableness of individuals' expectation of privacy in CSLI automatically collected by their service providers whenever they make calls.

*[Handwritten annotations: "History of 4th Amendment violations By law enforcement officers"; "history of 4th Amendment violation"]*

Case 1:14-cv-02693-RJD   Document 13   Filed 03/31/15   Page 4 of 6 PageID #: 46

> "Even if this Court assumes without deciding whether relying on the less stringent standard of § 2703(d) to obtain the ping order violated the Fourth Amendment, the evidence was admissible because it was 'purged of the primary taint.'"
>
> CHIEF JUSTICE MARY R. RUSSELL

No Missouri state court has ruled on this issue. In an opinion by Chief Justice Mary R. Russell, the high court declined to enter into the debate in this case and chose, instead, to resolve the defendant's Fourth Amendment challenges on the basis of the exclusionary rule.

**Defendant's Flight Purged Evidence of Any Taint.** Homicide investigators obtained a court order authorizing a ping of the defendant's mobile phone. When they learned the defendant's location, they requested a patrol car to stop the vehicle he was driving.

The defendant, however, did not immediately stop, and he led police on a chase. When he eventually did stop, officers saw in plain view a bulletproof vest and a gun in his car.

Under *California v. Hodari D.*, 499 U.S. 621 (1991), a police officer's command to halt or other "show of authority" does not constitute a Fourth Amendment seizure unless and until the suspect submits. Relying on *Hodari D.*, the Missouri court held that, even assuming that the defendant is right about the unconstitutionality of the SCA, his flight from police after they obtained the ping order and before their discovery of the evidence in this case represented an "intervening circumstance" that attenuated the evidence from the allegedly unconstitutional ping order. The flight also went a long way toward providing the reasonable suspicion needed to justify the stop, the court held.

"Even if this Court assumes without deciding whether relying on the less stringent standard of § 2703(d) to obtain the ping order violated the Fourth Amendment, the evidence was admissible because it was 'purged of the primary taint,'" the court said, quoting *Wong Sun v. United States*, 371 U.S. 471 (1963).

The defendant was represented by the Public Defender's Office. The state was represented by the Attorney General's Office.

BY HUGH B. KAPLAN

Full text at http://www.bloomberglaw.com/public/document/State_v_Hosier_No_SC93855_2015_BL_28352_Mo_Feb_03_2015_Court_Opin.

*Kidnapping*

## Facts Surrounding Rape Weren't Enough To Sustain Conviction for Kidnapping Too

A rapist who took away the victim's mobile phone, dragged the victim to a bedroom and locked the doors to the bedroom and the apartment didn't do enough to deserve a conviction of kidnapping to go along with the conviction of rape, the Iowa Supreme Court decided Feb. 6 (*State v. Robinson*, 2015 BL 30611, Iowa, No. 12-1323, 2/6/15).

The court's ruling in this close case will identify when, in Iowa, the confinement and other circumstances of a rape or robbery will support convictions for both kidnapping and the underlying offense.

The court had previously joined those courts that have interpreted their jurisdictions' kidnapping statutes as authorizing a conviction of kidnapping when the confinement was more than "incidental" to some other offense. However, even among other jurisdictions that have adopted the same approach, there is case law that would support a ruling that the facts in this case did not warrant a conviction for kidnapping in addition to the underlying rape, the court said.

"In the end, the question calls for an exercise of our judgment as to whether, on the totality of the circumstances, the State offered sufficient evidence that a jury could find beyond a reasonable doubt that the defendant's confinement of the victim *substantially* increased the risk of harm, *significantly* lessened the risk of detection, or *significantly* facilitated escape," the court stressed in an opinion by Justice Brent R. Appel.

**Kidnapping Incidental to Another Offense.** The evidence of the tossing of the mobile phone, the locking of the doors, the covering of the victim's mouth and the additional confinement associated with movement of the victim from the hallway to the bedroom did not provide a sufficient basis to allow the jury to regard the case as presenting more than sexual abuse, the court decided.

"While there might be some marginal increase in the risk of harm, lessening of detention, or facilitation of escape, we conclude it is not sufficient to trigger dramati-

---

### Rulings on Cell Site Tracking

*Tracey v. State*, 2014 BL 289851 (Fla. 2014) (96 CrL 105, 10/22/14) (Fourth Amendment requires warrant for real time CSLI).

*United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014) (95 CrL 382, 6/18/14) (warrant required for historic CSLI), *rehearing en banc granted* 2014 BL 247528 (95 CrL 646, 9/10/14) (11th Cir. 2014).

*Commonwealth v. Augustine*, 467 Mass. 230, 2014 BL 42630 (Mass. 2014) (94 CrL 601, 2/26/14) (state constitution requires warrant for historic CSLI).

*In re Application of United States for Historical Cell Site Data*, 724 F.3d 600, 2013 BL 201390 (5th Cir. 2013) (93 CrL 605, 8/7/13) (no warrant required for historic CSLI).

*State v. Earls*, 70 A.3d 630, 2013 BL 192773 (N.J. 2013) (93 CrL 552, 7/24/13) (state constitution requires warrant for both historic CSLI and real time GPS tracking).

*In re Application of United States of America for Order Directing Provider of Electronic Communication Service to Disclose Records to Government*, 620 F.3d 304, 2010 BL 206758 (3d Cir. 2010) (87 CrL 851, 9/15/10) (no warrant required for historic CSLI).

---

COPYRIGHT © 2015 BY THE BUREAU OF NATIONAL AFFAIRS, INC.   CRL   ISSN 0011-1341



Metropolitan Detention Center
Doris Yembe 05176-104
P.O. Box 329002
Brooklyn, New York 11232

Honorable & Respected
Judge Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, New York, 11201

urgent & important

Proverbs 21:31 The horse is made ready for the day of battle but the victory is to the Lord.

{ God Bless You }