

PART 3 :Exhibit 3
Alex Kapolchok
to:
ellen_mulqueen@nyed.uscourts.gov
10/30/2015 12:21 PM
Cc:
"Orenstein, Karin (USANYE)"
Hide Details
From: Alex Kapolchok <Alex@kapolchoklawservices.com>
To: "ellen_mulqueen@nyed.uscourts.gov" <ellen_mulqueen@nyed.uscourts.gov>,
Cc: "Orenstein, Karin (USANYE)" <Karin.Orenstein@usdoj.gov>
Security:
To ensure privacy, images from remote sites were prevented from downloading. Show Images
History: This message has been forwarded.

5 Attachments

    
Exhibit 3.jpg  Exhibit 3 part 2.jpg  ethical violations.jpg  ABA Model.jpg  ex 3-prosecutorial misconduct.jpg

See attached

**KAPOLCHOK LEGAL SERVICES**
Alexander Kaplochok
B.A Criminal Justice/Psychology
Case Manager & Legal Analyst

Phone: 850-745-GOD5(4635)

**JOHN 8:32** And You shall know the truth and the truth
shall set you free

---

**From:** Pastor D
**Sent:** Thursday, October 29, 2015 1:24 AM
**To:** Pastor D; Alex Kapolchok
**Subject:** Exhibit 3

## THE MINISTRY OF JUSTICE

- ## Legal Strategy;
- ## Case Management;
- ## Investigative Journalism;
- ## Ministerial Services;

- Treasury.



## *Pastor D,* Public Relations, International Press & Media (Spokesperson)

**Political, Legal & International News Anchor**
**Phone: 347-771-8147**
***https://twitter.com/pastor_d_paris***

### Pastor D (@pastor_d_paris) | Twitter

The latest Tweets from Pastor D (@pastor_d_paris). A Pastor, Political News Anchor, Activist & investigative journalist exposing the truth to get Justice for Prisoners Rights by sharing the Love of Jesus Christ. Worldwide

Read more...

**LUKE 8:17** For nothing is hidden that will not become evident, nor anything secret that will not be known and come to light.

# -EXHIBIT 3-

Karen Oreinsein Denial to Admit and address
Defendant's claim against Illegal Forfeiture

# **EXHIBIT 3-KAREN ORENSTEIN**

Transcript of October 21 2015 showing Lerer besides Orenstein stating before the Court that Ms.Yembe never
made a claim against the forfeited Items although advised to do so.

However, it was another lie for, see letter attached by Robert Larusso on behalf
of Ms.Yembe on November 18 2014 showing homeland security reception stamps for september 14 at 2 pm
for all claims submitted by Ms.Yembe.

Full text at http://www.bloomberglaw.com/public/document/United_States_v_Gnirke_No_1350101_2015_BL_99_9th_Cir_Jan_02_2015_.

## Forfeiture

### $50K Cash Bail Seized, But Lack of Notice To Prisoner Allows Motion to Recover Assets

A convicted man whose $50,000 bail, posted in cash, was seized by the DEA for lack of notice, the U.S. Court of Appeals for the Second Circuit held Jan. 6 (*Lucas v. United States*, 2015 BL 2181, 2d Cir., No. 14-2291, 1/6/15).

The right to reopen a completed civil forfeiture is "very narrow" and "limited to claims of lack of adequate notice" under the Civil Asset Forfeiture Reform Act, 18 U.S.C. 983(e)(1), the per curiam opinion said.

**Interest to Challenge Outlasts Actual Interest.** A completed forfeiture "divests a person of his interest in the subject property," but doesn't divest him of "a right to seek to set aside the forfeiture with respect to his interest in the property," the court said.

The right "may only be asserted within five years after the final notice of seizure, but the statute clearly confers the right for that period even after the forfeiture is complete," the court said.

"We are aware of no circuit court authority that holds, contrary to the statute," that Article III standing "is lost after the interest in the subject property vests in the United States," it said.

"Accordingly, we hold that § 983(e)(1) creates an interest in the form of a right to challenge a forfeiture for lack of notice that survives the issuance of the declaration of forfeiture," the court said.

**DEA's Notices Inadequate.**  The bail money was originally posted by the defendant's brother. After the case was resolved by a guilty plea, the brother assigned his interest in the bail money to the convicted man, who attempted to collect the $50,000, the court said.

However, the DEA had already seized the cash as part of a criminal investigation. It sent notices to the defendant in New York and at his last address in the Massachusetts facility where he was held pending trial. It sent notice of the bail seizure to his then-current residence.

"Because none of these notices were sent for-ward" to the brother "pending participation of [the brother]," it said.

**Assignment Valid Despite Vesting.** The appeals court rejected the district court's reasoning that the assignment was invalid because, at the time it was made, the forfeiture had been completed and all interest in the property vested in the U.S.

The interest the brother retained "was the right to move to set aside the forfeiture under § 983(e)(1)," and "that right he was free to assign."

The appeals court also rejected the government's argument that the assignment was invalid under New York law because it was made without consideration.

The convicted man "would not be able to claim an interest of his own in the property, as a bona fide purchaser, free and clear of the Government's claim," the court said.

But he "is not, however, claiming any such interest in the bail money independent of [his brother's] interest," it said.

"Therefore, the fact that he gave [the brother] nothing of value in exchange for the assignment is irrelevant to his right to file a motion to set aside the forfeiture under the statute," the court said.

Judges Gerard E. Lynch, Denny Chin and John G. Koeltl, sitting by designation from the U.S. District Court for the Southern District of New York, comprised the panel.

Wayne P. Smith, of Schenectady, N.Y., represented the convicted man. The U.S. Attorney's Office, Syracuse, N.Y., represented the government.

Full text at http://www.bloomberglaw.com/public/document/NICHOLAS_M_LUCAS_as_assignee_of_Justin_Lucas_PetitionerAppellant_.

## Cruel and Unusual Punishment

### Putative Class of Prisoners May Proceed With Claims Over Grouping of Violent Inmates

A finding of ascertainability isn't required for class certification where the class seeks only injunctive or declaratory relief, the Third Circuit held Jan. 7 in a putative class action challenging the practice at the federal prison in Lewisburg, Pa., of placing inmates with violent tendencies in the same unit (*Shelton v. Bledsoe*, 2015 BL 2242, 3d Cir., No. 12-4226, 1/7/15).

The U.S. Court of Appeals for the Third Circuit vacated a district court order denying certification of a class of prisoners under Federal Rule of Civil Procedure 23(b)(2), concerning a prison's alleged practice of placing inmates in the same cell despite knowing that they are hostile to each other.

The opinion by Chief Judge Theodore A. McKee also found that the proposed class's inclusion of those who haven't yet suffered an injury wasn't overbroad, because the Eighth Amendment "protects against the risk—not merely the manifestation—of harm."

The court ruled further that a nonmovant's request for discovery under Fed. R. Civ. P. 56(d) in response to a summary judgment motion doesn't have to take the form of a formal motion, and can be a declaration or affidavit requesting discovery.

The decision also vacated the district court's grant of summary judgment to the federal government on the Eighth Amendment claim, remanding the case.

The Third Circuit affirmed the district court's dismissal of a related Federal Tort Claims Act claim because the plaintiff failed to meet the FTCA's administrative exhaustion requirement.

**Hostile Inmates.** The plaintiff, Norman Shelton, is an inmate at the federal penitentiary in Lewisburg and is assigned to the "Special Management Unit" of inmates identified as having a history of gang activity or violent tendencies, the court said.

---

In forfeiture proceeding, receivers for insurance companies were entitled to imposition of constructive trust over proceeds of sale of certain residence because residence was purchased with funds obtained by looting insurance companies, insurance companies had no knowledge of purchase of residence, and thus, were innocent owners, and receivers' claim had priority over that of holder of judgment lien because their entitlement to constructive trust arose upon completion of purchase of residence, which occurred six months before other claimant obtained judgment lien. *United States v § 2,350,000.00* (2010, DC Conn) 718 F Supp 2d 215

### Unpublished Opinion

District court properly calculated order of forfeiture based upon wholesale value of contraband cigarettes as it was authorized under 18 USCS § 981(a)(2)(A) in that proceeds was not limited to net gain or profit realized from defendant's conspiracy offense. *United States v Noorani* (2006, CA11 Fla) 188 Fed Appx 833, subsequent app (2006, CA11 Fla) 194 Fed Appx 871

Where defendant pled guilty to conspiracy to commit honest services fraud and tax fraud, district court properly dismissed his petition for relief from forfeiture order as barred by forfeiture waiver in his plea agreement; fact that plea agreement mistakenly referenced 18 USCS § 924(d)(1), which authorized forfeiture of firearms and ammunition, was merely scrivener's error and did not negate express terms of plea agreement that listed real and personal property; 18 USCS § 981(a)(1)(C) was specific forfeiture statute cited in defendant's information and district court's forfeiture order. *United States v Masilotti* (2014, CA11 Fla) 2014 US App LEXIS 8830

Unlawful Forfeiture proceedings.

USCS                                                                     1

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The Government track Record of stealing property From defendants

05176104

## Prosecutorial Misconduct (cont.)

or limiting absolute immunity would force prosecutors to consider the consequences of their actions relative to their personal accountability.

It is obvious ~~from the examples cited herein and elsewhere that prosecutors are not immune to ethical violations, deliberate wrongdoing or incompetence, thus they should not be afforded the benefit of absolute immunity.~~

It is worth noting that absolute immunity does not extend to prosecutors when they engage in conduct unrelated to their official prosecutorial duties – such as investigative or discretionary activities. For example, one such case involved comments made by a prosecutor during a press conference. See: *Buckley v. Fitzsimmons*, 113 S.Ct. 2606 (1993).

The distinction as to what conduct is entitled to immunity can be complicated due to various loopholes, however, as discussed in a recent Seventh Circuit decision that found a prosecutor was not entitled to absolute immunity for fabricating evidence before a defendant's indictment and then prosecuting the defendant, who was eventually exonerated after serving 17 years in prison.

In a fairly technical ruling, the Court of Appeals explained that "A prosecutor cannot retroactively immunize himself from conduct by perfecting his [investigatory] wrongdoing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity." See: *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014).

In a 2014 report, the Center for Prosecutor Integrity suggested replacing prosecutorial absolute immunity with qualified immunity – a lesser form of immunity defense commonly applied to other government actors.

Another alternative to curtailing the absolute immunity granted to prosecutors in *civil* cases is to file *criminal* charges against prosecutors who engage in egregious misconduct – particularly misconduct that results in wrongful convictions. That was the suggestion of Dallas County district attorney Craig Watkins, who has proposed the increased use of criminal charges to sanction abusive prosecutors; for example, criminal contempt of court.

But then who would prosecute those prosecutors? Presumably, other prosecutors.

### Conclusion

THE PERVASIVENESS OF PROSECUTORIAL misconduct is a problem that requires immediate attention by lawmakers, the judiciary, and the professional watchdog organizations and tribunals charged with overseeing attorney discipline, as well as by prosecutors themselves.

Legislative efforts such as the Fairness in Disclosure of Evidence Act are a positive development, though they tend to focus on *Brady*-related issues and do not reach other forms of wrongdoing. Ultimately, the reporting and redress of prosecutorial misconduct must come from those within the criminal justice system, including judges and defense attorneys, such as through the enforcement of a stronger version of ABA Model Rule 3.8 and similar regulations.

Meaningful disciplinary proceedings, also a useful tool, have been under-utilized, and a change in the "conviction at any cost" culture among prosecutors must be realized through better professional training and education. Only then will we be able to truly address this pervasive problem that serves to undermine public confidence in our criminal justice system – where the emphasis should be on "justice," not conviction rates.

Yet from the viewpoint of those victimized by abusive prosecutors, including those who have been wrongly convicted and imprisoned, disciplinary sanctions such as reprimands, censures and suspensions provide little comfort. Michael Morton spent nearly 25 years in prison; John Thompson was almost executed. And there are other examples of prosecutorial misconduct that has put innocent people behind bars on death row.

Ultimately, a change in the adversarial nature of our criminal justice system is needed. Such change is possible, but only if an honest effort is made by everyone involved, beginning with how prosecutors view their own role, responsibilities and ethical obligations.

As stated by Thompson: "It's about a system that is void of integrity. Mistakes can happen. But if you don't do anything to stop them from happening again, you just keep calling them mistakes."

Sources: *ABA Journal; American Bar Association Model Rule of Professional Conduct 3.8* (2008); *American-Statesman; Arizona Star; Associated Press; Daily Business Review; Houston Chronicle; http://allthingscriminal.com; http://jacksonville.com; http://news.yahoo.com; National Law Journal; New York Daily News; The New York Times; "Preventable Error: A Report on Prosecutorial Misconduct in California, 1997-2009," by Veritas Institute (October 2011); "Prosecutor Misconduct," 2d. ed., by Bennett Gershman; "Prosecutor Misconduct: Law, Procedure, Forms," by Joseph F. Lawless (2011); Champion; "The Myth of Prosecutorial Accountability After Connick v. Thompson: Why Existing Professional Responsibility Measures Cannot Protect Against Prosecutorial Misconduct," by David Keenan, et al., 121 Yale Law Journal Online 203 (Oct. 2011); Texas Tribune; National Registry of Exonerations; USA Today; Washington Examiner; www.alternet.org; www.cnn.gov; www.huffingtonpost.com; www.law.com; www.nationalreview.com; www.newobserver.com; www.prisonlawblog.com; www.propublica.org; www.prosecutorialaccountability.com; www.reuters.com; www.sptimes.com; www.star-telegram.com; www.stopthedrugwar.org; www.times-standard.com; www.prosecutorintegrity.org; www.innocenceproject.org; www.watchdog.org; http://gritsforbreakfast.blogspot.com; www.law.umich.edu; "The Brady Colloquy," by Jason Kreag, 67 Stan. L. Rev. Online 47 (Sept. 2014); www.abcnews.go.com; www.economist.com; www.federalcriminalappealsblog.com; www.nola.com; Los Angeles Times; www.syracuse.com; www.justice.gov/opr; www.pogo.org; Tulsa World; www.bronxbureau.org; www.ksl.com; Commercial Appeal*



**BATTLING THE ADMINISTRATION**
An Inmate's Guide to a Successful Lawsuit
by David J. Meister

---

## Prosecutorial Misconduct (cont.)

Louisiana Attorney Discipline Board recommended a six-month suspension but the state Supreme Court imposed only a public reprimand.

Asked by a *Huffington Post* reporter whether any prosecutors had ever said they were sorry for his wrongful conviction, Thompson responded, "Sorry? For what? You tell me that. Tell me what the hell would they be sorry for. They tried to kill me. To apologize would mean they're admitting the system is broken.... That everyone around them is broken. It's the same motherfucking system that's protecting them."

Less than a year after the Supreme Court's ruling in *Connick v. Thompson*, the Court found *Brady* violations by the Orleans Parish District Attorney's Office in another prosecution. In that case, the Court reversed the murder convictions of a defendant based on claims that prosecutors had withheld material evidence. See: *Smith v. Cain*, 132 S.Ct. 627 (2012).

### ABA Model Rule 3.8

THE AMERICAN BAR ASSOCIATION'S Model Rules of Professional Conduct are widely recognized as the touchstone of ethical behavior for attorneys. Model Rule 3.8, "Special Responsibilities of a Prosecutor," has been adopted by 49 states, Guam, the U.S. Virgin Islands and the District of Columbia. California is the only state to not adopt a similar rule.

While the ABA's Model Rules apply equally to all attorneys, Rule 3.8 is notable because it's the only rule specific to prosecutors. As such, most commentators view Rule 3.8 as the starting point for prosecutorial ethics.

Rule 3.8 defines "special" ethical duties applicable to prosecutors, including the following, among others. The Rule provides that prosecutors shall:

• Refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

• Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

• Except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused; — *prosecuted*

• When informed of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall promptly disclose that evidence to an appropriate court or authority and, if the conviction was obtained in the prosecutor's jurisdiction, promptly disclose that evidence to the defendant unless a court authorizes delay, and undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit; and

• When a prosecutor knows of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall seek to remedy the conviction.

Model Rule 3.8 imposes disclosure obligations that are "separate from broader than the *Brady* constitutional standards," as the ABA noted in an *amicus* brief filed with the Supreme Court in *Smith v. Cain*.

With this in mind, Rule 3.8 would seem to require prosecutors to adhere to a heightened standard of conduct. Yet this is only in theory because, as a 2011 *Law Journal Online* article notes, the Rule's "vague terminology undermines its efficacy and enforceability in practice."

For example, "Rule 3.8's prescriptive force is [] greatly diminished by its failure to address many important aspects of prosecutorial function," including plea bargains. More than 90% of federal criminal prosecutions are resolved through guilty pleas [see: *PLN*, Jan. 2013, p.20]; however, Rule 3.8 fails to address prosecutorial conduct during plea negotiations.

"In sum, Model Rule 3.8 promises its face more than it delivers in practice," the *Yale Law* article concludes. "While the many instances of prosecutorial misconduct that clearly fall within its ambit, the Rule fails to address some of the more significant aspects of the prosecutor's justice-seeking role."

Even if flawed, Rule 3.8 is still one of the few existing tools for curbing prosecutorial misconduct. Indeed, Innocence Project co-founder Barry Scheck and former federal judge Nancy Gertner co-authored an article recommending that defense attorneys specifically cite Model Rule



Contact Us:
Inmates: inmates@aicsllc.net • 303-214-0097
Families: www.aicsllc.net • billing@aicsllc.net • 866-645-9593

# **Exhibit 3- Prosecutorial Misconduct**

Prosecutorial misconduct otherwise said , malicious prosecution statements made several times by Ms.Yembe are valid
per the ABA Model and all evidence of lies intercepted.

See attachement of prosecutorial misconduct and underlined data of all ethical violations committed against Ms.Yembe which remain unaddressed until today.

Also please see attached a case of illegal forfeiture were justed was granted.

Ms.Yembe claims that prejudice, racial discrimination, her being an Alien Immigrant
has played a major part in all violation she has endured besides, all the
accusation which for long remained unsupported by valid evidence therefore
could not constitute a legal case which ultimately led to its dismissal
in a world where a 98.9% conviction rates rules, and Prosecutors
use dirty tactics to force and twist the arm of defendant to
bend and sign malicious proposal, Ms.Yembe is a miraculous proof of
God's blessing and desire for justice to be exposed to the light of the
darkness of false accusation, wrongful imprisonment and torture
behind bars for which so many prisoner are still currently victims.

Ms.Yembe like many other victim of wrongful imprisonment is entitled to financial compensation for trauma, sexual, emotional, psychological abuse, ethical violations
wrongful imprisonment for dismissed case after 14 months of her life were stolen,
her name slandered, and life ruined, however instead of such, she is
fighting a forfeiture case where further violation are being entertained
and attempted.